**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Christopher Jones,<br><br>    Plaintiff<br><br>    v.<br><br>Alan Zimmer, et al.,<br><br>    Defendants | Case No.: 2:12-cv-01578-JAD-NJK<br><br>**Order Granting Notice of Errors [Doc. 18] and Granting Motion for the Court to Address Errors [Doc. 29]** |

    Plaintiff Christopher Jones brings this 1983 civil rights action against employees of the Nevada Department of Corrections. Before the Court are his Notice of Errors in the Screening Order, Doc. 18, and his Motion for the Court to Address Errors. Doc. 29.

    Courts within the Ninth Circuit must liberally construe pro se filings, particularly when inmates file civil rights complaints that could arise under either 42 U.S.C. § 1983 or 42 U.S.C. § 1985. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (writing that pro se documents are "to be liberally construed"); *see also Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc) (citation omitted) (writing that "[a]lthough [the] appeal was drafted in terms of § 1983 only, we have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt."). The Court liberally construes the "Notice of Errors in the Screening Order"

1

as a motion to reconsider the Screening Order, Doc. 16, which was entered on June 7, 2013.[1]  The motion for reconsideration raises two concerns: a typographical error in the Screening Order, Doc. 16, and whether Plaintiff's first claim for relief states a First Amendment retaliation claim—a nuance that was overlooked in the Screening Order.  The court liberally construes the Motion to Address these errors as a request to expedite consideration of the motion for reconsideration.  After full consideration of these motions and the record, the Court grants both motions as set forth below.

## Discussion

Motions for reconsideration are not expressly authorized in the Federal Rules of Civil Procedure, but district courts may grant them under Rule 59(e).  *See Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 179 F.3d 656, 665 (9th Cir. 1999).  Reconsideration is only warranted when: (1) the movant presents newly discovered evidence, (2) the district court committed clear error or the initial ruling was manifestly unjust, or (3) there is an intervening change in controlling law.  *Id.* (citing *All Haw. Tours, Corp. v. Polynesian Cultural Ctr.*, 116 F.R.D. 645, 648 (D. Haw. 1987)).  Although reconsideration may also be warranted under other highly unusual circumstances, it is well recognized as an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2007) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)).

**I.**

**Count VI of Jones's Amended Complaint Discusses an Upheld Grievance.**

As Jones writes in his motion for reconsideration, the Screening Order contains a clear typographical error as to Count VI.  The Screening Order states that "Plaintiff alleges that during the appeal process of the grievance, which had been *denied*, a correctional employee brought the fact of plaintiff's grievance to defendant Wilson's attention on or about March 5-8, 2012."  Doc. 16 at 10 (emphasis added).  Jones correctly observes that the cited portion of his Amended Complaint

---

[1] The case was reassigned to Judge Jennifer Dorsey on August 8, 2013.  Doc. 20.

2

represents the grievance as being *upheld* or granted. Doc. 18 at 2; *see also* Doc. 8 at 37–38. The Court finds that the Screening Order should have said "upheld" on page ten at line eleven.

## II.

### Count I of Jones's Amended Complaint Alleges a Colorable First Amendment Retaliation Claim

On the facts alleged, the Screening Order liberally construes Count I of Jones's handwritten, pro se document as a colorable claim under the Due Process Clause. *See* Doc. 8 at 3–6; *see also Erickson*, 551 U.S. at 94. While Jones is willing to accept this due process claim as part of his action against correctional officials, he accurately observes that his Amended Complaint pleads Count I as a free speech claim. *See* Doc. 18 at 2; *see also* Doc. 8 at 6–20. It expressly alleges violations of Jones's First and Fourteenth Amendment rights. Doc. 8 at 6. This Court finds it appropriate to now also screen Count I for a colorable free speech claim under the First and Fourteenth Amendments.[2]

Prison authorities have simultaneous duties to respect the Constitution and to control the penological climate for the needs of many prisoners. The Supreme Court declared in *Turner v. Safley* that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). It also recognized that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform" and, therefore, "accord deference to the appropriate prison authorities." *Id.* (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)). The free speech standard is diminished in prisons, as compared to the nation at large, because it must yield to the need for creating a climate of consistency and control. *Cf. Shaw v. Murphy*, 532 U.S. 223, 229 (2001). Thus, "an inmate retains

---

[2] When a prisoner brings a civil rights action against a state actor, the court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)–(b). Under the Prison Litigation Reform Act of 1995, a screening order must further dismiss any case where poverty is falsely alleged, or where the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915. *See also* Doc. 16 at 1–3 (identifying standards applicable to screening orders).

those First Amendment rights not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977)) (internal quotation marks omitted). The question is whether officials' disciplinary decisions were commiserate with their authority to control the prison climate.

Under *Turner*, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Courts must apply four factors. First, *Turner* requires "a valid, rational connection between the prison regulation and the legitimate government interest put forth to justify it." *Id.* (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)) (internal quotation marks omitted). Second, judicial deference is particularly appropriate when inmates have alternative means of exercising the right at issue. *Id.* at 90 (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977); *Pell v. Procunier*, 417 U.S. 817, 827 (1974)). Third, courts must examine how the asserted constitutional right will impact guards, other inmates, and prison resource allocation in general. Fourth, if there are no ready alternatives, courts take this as evidence of a prison regulation's reasonableness. *Id.* (citations omitted). Obvious and easy alternatives—including ideas proposed by inmates—may show that a regulation is unreasonable, but courts are not to take this as a "least restrictive alternative" test. *See id.* at 90–91. The standard is reasonable relationship. *Id.* at 91.

*Turner* and the Supreme Court's subsequent ruling in *Shaw v. Murphy* do not permit courts to weigh the content of a prisoner's speech when he brings a First Amendment claim because enhancing or diminishing constitutional protection, using content-based evaluation, would cause courts to overstep into the discretion of correctional officials. *Shaw*, 532 U.S. at 230 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The standard remains "unitary" and "deferential": whether the prison regulation is reasonably related to legitimate penological interests. *Id.* at 229.

4

The federal circuits widely recognize that retaliatory acts by prison officials, when inmates exercise their protected First Amendment rights, give rise to cognizable civil rights claims.[3] *Pratt v. Rowland*, 65 F.3d 802, 806 n.4 (9th Cir. 1995). To successfully state a retaliation claim, the prisoner must allege that his conduct fell under a protected constitutional right.[4] *See Rizzo v. Dawson*, 778 F.2d 527, 531 (1985). Second, he must allege that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *Id.* at 532 (citing *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984)). The requirement of a casual connection between the protected speech and the retaliation is implicit in this analysis. *Cf. Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citation omitted) (discussing the elements of a retaliation claim, including the causal link, in the Eleventh Circuit).

Count I of Jones's Amended Complaint is for "impeding upon [Jones's] right of free speech and punishment for expressing an observation that did not threaten a legitimate penological interest, in violation of the 1st and 14th amendments." Doc. 8 at 6. Jones alleges that his prison unit went on lockdown from March 7 to March 23, 2011, as the result of a confrontation between an inmate kitchen worker and a non-correctional-officer staff member. Doc. 8 at 4. Jones claims he was not involved in that altercation, in which he believes the kitchen-staff supervisor was injured. Doc. 8 at 4. He was seated in the dining hall for breakfast on March 23 when his tablemates Thomas Wright and Ernest Oliver returned to the feeding slot for salt and pepper. Doc. 8 at 6–7. Sargent Alan Zimmer entered the hall and yelled at the two standing prisoners: "Sit your goddamn asses down!" Doc. 8 at 8. Wright and Oliver responded, "We are just waiting for salt and pepper[;] they told us to wait while they get it." Doc. 8 at 8. Sgt. Zimmer repeated his order from the other side of the hall.

---

[3] The Ninth Circuit has further found that the law against retaliatory punishment is clearly established for qualified immunity purposes. *Pratt*, 65 F.3d at 806.

[4] This claim is often discussed as "First Amendment retaliation," but the Ninth Circuit categorizes it more precisely under the heading of impermissible, government-imposed burdens placed on the plaintiff "because he exercised a constitutional right. *See Blaisdell v. Frappiea*, 729 F.3d 1237, 1242 (9th Cir. 2013) (quoting *Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 545 (1983)) (citation omitted). The heading matters because unconstitutional, retaliatory "actions need not be tethered to the speech or associational freedoms secured by that Bill of Rights provision." *Id.*

Doc. 8 at 8.  Jones then said to another inmate, "That's exactly why that s*** happened in the kitchen, talking to grown ass men like that!"  Doc. 8 at 7–8.  Jones characterizes this as a "harmless observation"—a mere comparison or "only a belief as to why a previous incident had occurred"—that caused no disruption in the dining hall.  Doc. 8 at 9–11, 19.

Jones alleges that "[n]o panic or uprising or other threats to institutional safety and security existed" and that "[e]verything was normal."  Doc, 8 at 9.  He believes Sgt. Zimmer did not hear him, but that an officer standing near Jones's table did and reported him to Sgt. Zimmer.  *See* Doc. 8 at 9.  About an hour after Jones returned to his unit, he was directed to roll up his property, placed in restraints, and taken to Sgt. Zimmer's office.  Doc. 8 at 10–11.  He received an administrative segregation notice and was reassigned to a disciplinary unit without any investigation.  Doc. 8 at 11.  Jones alleges material differences between conditions in the general population housing, from which he was removed, and the disciplinary segregated housing.  Doc. 8 at 14; Doc. 16 at 5–6.

On April 10, 2011, he was served a notice of March 23rd charges.  Doc. 8 at 11.  It cited him for delaying and interfering with staff, threats, and organizing work stoppage/demonstration.  Doc. 8 at 11–12.  It allegedly stated that "Jones . . . began loudly complaining," without saying that Jones directly addressed Sgt. Zimmer.  Doc. 8 at 19.  Supervisor Lt. Bryant signed it.  Doc. 8 at 12.  On April 10, Sgt. Doty dismissed the charges as unfounded and meritless, but Jones remained in segregation for 59 days.  Doc. 8 at 12.

Jones argues that his dining hall comment "did not even amount to abusive language . . . so Sgt. A. Zimmer had to falsely embellish the narrative as to punish me for something I had a right to say."  Doc. 8 at 13.  Jones believes "upon information and belief" that the staff, particularly Sgt. Zimmer, were "'hell bent' on punishing any inmate for what transpired on March 7, 2011 to send the inmate population a message that—if you hurt one of us, we will hurt and punish you."  Doc. 8 at 13.

Jones was considered "not a management problem," according to notes by his caseworker made on April 6, 2010, and he reports that his last major violations were in July 2007 and May 2005.  He quotes I.P. 7.11 as authorizing administrative segregation when inmates' continued

6

presence in the general population "poses a serious threat to life, property, self, staff or other inmates, or to the security or orderly running of the institution." Doc. 8 at 19. He further quotes I.P. 7.11 as requiring "programs conducive to [inmates'] wellbeing" when inmates are segregated—and alleges that no programs were provided during his fifty-nine day period of discipline, because he "was simply subjected to punitive housing due to the content of his observation." Doc. 8 at 12, 20.

This Court must determine whether Jones alleges a colorable claim for retaliatory discipline. Because no published Ninth Circuit case has addressed the extent of an inmate's right to comment or complain, this Court turns to other circuits for persuasive authority. In *Bridges v. Gilbert*, the Seventh Circuit found that a prisoner had a protected First Amendment right to assist a deceased inmate's mother in her wrongful death lawsuit against prison officials. *Bridges v. Gilbert*, 557 F.3d 541, 544, 555 (7th Cir. 2009). The *Bridges* court applied *Turner* to find that "[p]risons have an interest in keeping the inmates as safe and secure as possible" and that "truthful speech that describes possible abuses can actually be quite consistent with that objective."[5] *Id.* at 554 (citing *Cornell v. Woods*, 69 F.3d 1383, 1388 (8th Cir.1995)). On the other side of the free speech line, the Seventh Circuit found no protected right where a prison law clerk "openly challeng[ed] [the law librarian's] directives in front of other prisoner law clerks," thereby "imped[ing] her authority and her ability to implement library policy." *Watkins v. Kasper*, 599 F.3d 791, 797 (7th Cir. 2010) (citation omitted); *cf. Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008) (finding that "false and insubordinate remarks fell within the rules' proscriptions and, accordingly, were not protected."). These decisions comport with the Supreme Court holding that an "inmate retains those First

---

[5] *Bridges* further holds that the *Turner* test is directly applicable to prisoners, without requiring inmates' speech to be about a matter of public concern. *Bridges*, 557 F.3d at 551. This is distinguishable from the free speech rules for government employees, where protected speech must concern a matter of public interest. *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). The Seventh Circuit determination in this regard is compatible with other circuit decisions and, depending on the circuit in question, may even share other circuits' reasoning. *See Bridges*, 557 F.3d at 551 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999) (en banc); *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008); *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000); *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274 (3d Cir. 2004); *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989); *Cornell v. Woods,* 69 F.3d 1383, 1388 (8th Cir. 1995)). While the Ninth Circuit has not directly ruled on this issue, *Bridges* is also consistent with the test in *Rizzo* and related Ninth Circuit decisions that directly apply *Turner* without adding a public concern requirement. *See, e.g.*, *Rizzo*, 778 F.2d at 531–32.

1  Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate
2  penological objectives of the corrections system." *Pell*, 417 U.S. at 822.
3       The speech Jones alleges falls on the protected side of this line. Jones alleges that Sgt. Doty
4  dismissed the charges against him as "unfounded and meritless," Doc. 8 at 12, suggesting that the
5  prison found no fault with Jones's speech. Yet Jones spent 59 days in segregation for this conduct.
6  In addition, Jones alleges he was not enrolled in a "program conducive to [his] wellbeing," though
7  prison policy apparently requires this service for segregated inmates. Doc. 8 at 12, 20. Taken
8  together, these facts suggest that Jones was sitting in segregation for reasons that comported with
9  neither acceptable penological objectives nor required procedures.[6] Jones's Count I shall proceed as
10  a First Amendment retaliation claim.[7]
11  / / /
12  / / /
13  / / /
14  / / /
15  / / /
16  / / /
17  / / /
18  / / /
19  / / /

---

[6] *Baisdell v. Frappiea* holds that inmates can bring a retaliation claim when they are punished for constitutionally-protected conduct, even if the protected right arises from outside the First Amendment. *See Blaisdell*, 729 F.3d at 1242.

[7] Jones writes that, because the situation was not an emergency and because the charges against him "were totally unfounded [and] thus dismissed, the actions of Sgt. Zimmer were totally arbitrary concidering [sic] the time[,] place[,] and manner I voiced my observation to inmate Butler . . . " Doc. 8 at 18. This is the classic phrase from public-forum doctrine. *See, e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (upholding reasonable restrictions on "the time, place, or manner of protected speech") (citations omitted). Jones's Amended Complaint does not state a colorable claim under public forum doctrine because "a prison may be no more easily converted into a public forum than a military base." *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 134 (1977). Instead, the proper analysis is presented above: whether the discipline meted out to Jones was retaliatory or was consistent with the constitutional standard for prison discipline.

8

## II.
## Conclusion

Accordingly, and for the reasons set forth above,

It is hereby ORDERED that Plaintiff's Notice of Errors **[Doc. 18] is GRANTED**.

It is further ORDERED that Plaintiff's Motion for the Court to Address Errors **[Doc. 29] is GRANTED**.

DATED January 23, 2014.

_____
Jennifer A. Dorsey
United States District Judge

9